# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

HEIDI BATES, on behalf of herself and
all others similarly situated in the
Commonwealth of Massachusetts,

        Plaintiff,

vs.

AU OPTRONICS CORP.; AU
OPTRONICS CORP. AMERICA; CHI
MEI OPTOELECTRONICS CO., LTD.;
CHI MEI OPTOELECTRONICS USA,
INC.; CHUNGHWA PICTURE
TUBES; LTD.; FUJITSU LIMITED,
INC.; FUJITSU AMERICA, INC.;
HANNSTAR DISPLAY
CORPORATION; HITACHI, LTD.;
HITACHI DISPLAYS, LTD.;
HITACHI AMERICA, LTD.; IDTECH
CO., LTD; IDTECH USA, INC.; IPSA
ALPHA TECHNOLOGY LTD.;
LG.PHILIPS LCD CO., LTD.;
LG.PHILIPS LCD AMERICA, INC.;
MATSUSHITA ELECTRIC
INDUSTRIAL CO. LTD.;
PANASONIC CORPORATION OF
NORTH AMERICA; MITSUBISHI
ELECTRIC CORPORATION;
MITSUBISHI ELECTRIC &
ELECTRONICS USA, INC.; NEC
ELECTRONICS CORPORATION;
NEC ELECTRONICS AMERICA,
INC.; NEC LCD TECHNOLOGIES,
LTD.; SAMSUNG ELECTRONICS
COMPANY LTD.; SAMSUNG
ELECTRONICS AMERICA; SANYO
ELECTRIC CO., LTD.; SANYO
NORTH AMERICA CORPORATION;
EPSON IMAGING DEVICES
CORPORATION; SEIKO EPSON
CORPORATION; EPSON AMERICA,
INC.; EPSON ELECTRONICS
AMERICA, INC.; SHARP
CORPORATION; SHARP

CIVIL ACTION NO. _____

REQUEST FOR JURY TRIAL

## 07 CA 10948 NG

CLASS ACTION COMPLAINT

MAGISTRATE JUDGE _____

ELECTRONICS CORPORATION; S-
LCD CORPORATION; SYNTAX-
BRILLIAN CORP.; S-LCD
CORPORATION; TOSHIBA
CORPORATION; TOSHIBA
AMERICA INC.; TOSHIBA
MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD.; and JOHN
DOES 1-100,

          Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Heidi Bates ("Plaintiff" and/or "Bates"), through her attorneys, brings this civil action on behalf of herself and all others similarly situated in the Commonwealth of Massachusetts (collectively the "Class" or the "Class Members"), for damages and declaratory relief against the above named defendants ("Defendants"). Plaintiff, upon personal knowledge as to her own acts and status, and upon information and belief as to all other matters, alleges the following:

## INTRODUCTION

1.     This case arises out of a long-running conspiracy extending from January 1, 2002 and continuing until at least December 31, 2005 (the "Class Period"), among Defendants and their co-conspirators ("Co-Conspirators") with the purpose and effect of fixing prices, allocating market share, and committing other unlawful practices designed to inflate the prices of LCD and products containing LCD sold indirectly to Plaintiff and other purchasers in Massachusetts.

2.     Defendants and their Co-Conspirators have formed an international cartel to illegally restrict competition in the LCD market, targeting and severely burdening consumers in Massachusetts. The conspiracy has existed at least from January 1, 2002 to

2

December 31, 2005 and has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including Massachusetts. Defendants' conspiracy includes communications and meetings where Defendants agreed to eliminate competition and fix the prices and allocate markets for LCD.

3.      This conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their Co-Conspirators, the substantial terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and coordinate price increases of LCD in Massachusetts.

4.      Upon information and belief, Defendants committed the following wrongful conduct and horizontal agreements in furtherance of the conspiracy:

  (a)    participating in meetings and conversations where Defendants and their Co-Conspirators discussed and agreed to prices for LCD;

  (b)    participating in meetings and conversations where Defendants and their Co-Conspirators allocated markets and customers for LCD;

  (c)    participating in meetings and conversations where Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding and also agreed to submit complementary and non-competitive bids for particular contracts to supply LCD and products containing LCD to various consumers;

  (d)    exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

  (e)    issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

  (f)    facilitating, effectuating, implementing, monitoring, and

concealing the contract, combination, and conspiracy to
raise the prices of LCD sold.

## **JURISDICTION & VENUE**

5.      Plaintiff brings this Class Action pursuant to the Massachusetts Consumer
Protection Act, M.G.L. c. 93A, §§ 1, *et. seq.*

6.      It has been more than thirty days since Plaintiff served each Defendant
with the Demand Letter pursuant to and in compliance with M.G.L. c. 93A § 9(3). No
Defendant has offered a reasonable settlement.

7.      This Complaint is also filed under Section 16 of the Clayton Act, 15
U.S.C. § 26, to enjoin Defendants and their officers, agents, employees, and
representatives from engaging in the unlawful contract, combination, and conspiracy in
restraint of trade or commerce of LCD or products containing LCD.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in
controversy exceeds $5,000,000 exclusive of interest and costs when the claims of
individual class members are aggregated, and the parties are citizens of different states.

9.      Venue is proper in the United States District Court for the District of
Massachusetts pursuant to 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391, as Defendants
reside, transact business and/or are found within this District and/or a substantial part of
the events giving rise to the Class Members' claims arose in this District.

10.     This Court also has subject matter jurisdiction over Plaintiff's Clayton Act
claims under 28 U.S.C. § 1331 and, because their claims arise from the same case or
controversy as their injunctive claims, under 28 U.S.C. §1367.

11.     Without limiting the generality of the foregoing, Defendants (directly or
through agents who were at the time acting with actual and/or apparent authority and

4

within the scope of such authority) have:

(a)     transacted business in Massachusetts;

(b)     contracted to supply or obtain services or goods in
        Massachusetts;

(c)     availed themselves intentionally of the benefits of doing
        business in Massachusetts;

(d)     produced, promoted, sold, marketed, and/or distributed
        their products or services in Massachusetts and, thereby,
        have purposefully profited from their access to markets in
        Massachusetts;

(e)     caused tortious damage by act or omission in
        Massachusetts;

(f)     caused tortious damage in Massachusetts by acts or
        omissions committed outside such jurisdiction while (i)
        regularly doing or soliciting business in such jurisdiction,
        (ii) engaging in other persistent courses of conduct within
        such jurisdiction, and/or (iii) deriving substantial revenue
        from goods used or consumed or services rendered in such
        jurisdiction;

(g)     committed acts and omissions that Defendants knew or
        should have known would cause damage (and, in fact, did
        cause damage) in Massachusetts to Plaintiff and the Class
        Members while (i) regularly doing or soliciting business in
        such jurisdiction, (ii) engaging in other persistent courses
        of conduct within such jurisdiction, and/or (iii) deriving
        substantial revenue from goods used or consumed or
        services rendered in such jurisdiction;

(h)     engaged in a conspiracy with others doing business in
        Massachusetts that caused tortious damage in such
        jurisdiction; and

(i)     otherwise had the requisite minimum contacts with
        Massachusetts such that, under the circumstances, it is fair
        and reasonable to require Defendants to come to this Court
        to defend this action.

11.     Plaintiff Heidi Bates is a resident of Massachusetts. In addition, a

substantial part of the trade and commerce, as well as the arrangement, contract,

agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within Massachusetts, including, among other things, the indirect sale of LCD at supra-competitive prices to Plaintiff and other members of the class.

12. As a result of the manufacturing, distribution, delivery and sale of Defendants' products to indirect purchasers within Massachusetts, directly or through their subsidiaries, affiliates or agents, Defendants obtained the benefits of the laws of Massachusetts and the markets of Massachusetts for their products.

## PARTIES

### A. Plaintiff

13. Plaintiff Heidi Bates is a citizen and resident of Abington, Massachusetts. During the time period covered in this Complaint, Plaintiff indirectly purchased LCD from one or more of the defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for LCD and has been injured by reason of the illegal conduct alleged herein.

### B. Defendants

14. Defendant AU Optronics Corporation is a Taiwanese corporation with its principal place of business at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. Defendant AU Optronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

15. Defendant AU Optronics Corporation America is a wholly owned subsidiary of Defendant Au Optronics and is incorporated in California with its principal

6

place of business at 9720 Cypresswood Drive, Suite 241, Houston, Texas 77070.

Defendant AU Optronics Corporation America produced, promoted, sold, marketed,

and/or distributed LCD to consumers throughout the United States, including in

Massachusetts, during the Class Period. Defendants AU Optronics Corporation and AU

Optronics Corporation are referred to collectively as "AU Optronics."

16.     Defendant Chi Mei Optoelectronics Co., Ltd. is a Taiwanese corporation

with its principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Park,

Tainan, 74147 Taiwan, R.O.C. Defendant Chi Mei Optoelectronics Co., Ltd. produced,

promoted, sold, marketed, and/or distributed LCD to consumers throughout the United

States, including in Massachusetts, during the Class Period.

17.     Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned

subsidiary of Defendant Chi Mei Optoelectronics and is incorporated in Delaware with its

principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110.

Defendant Chi Mei Optoelectronics USA, Inc. produced, promoted, sold, marketed,

and/or distributed LCD to consumers throughout the United States, including in

Massachusetts, during the Class Period. Defendants Chi Mei Optoelectronics USA, Inc.

and Chi Mei Optoelectronics Co., Ltd. are referred to collectively as "Chi Mei

Optoelectronics."

18.     Defendant Chunghwa Picture Tubes, Ltd. is a Taiwanese corporation with

its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan, R.O.C.

Defendant Chunghwa Picture Tubes, Ltd. produced, promoted, sold, marketed, and/or

distributed LCD to consumers throughout the United States, including Massachusetts,

during the Class Period.

19.    Defendant Fujitsu Limited, Inc. is a Japanese corporation with its principal place of business at Shiodome City Center 1-5-2 Higashi Shimbashi, Minato-ku, Tokyo, 105-7123 Japan. Defendant Fujitsu Limited, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

20.    Defendant Fujitsu America, Inc., is a wholly owned subsidiary of Defendant Fujitsu Limited, Inc. and is incorporated in California with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, California 94085. Defendant Fujitsu America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

21.    Defendant Hannstar Display is a Taiwanese corporation with its principal place of business at 12Fl., No. 480, Rueiguang Road, Neihu Chiu, Taipei 114, Taiwan, R.O.C. Defendant Hannstar Display produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

22.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Defendant Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

23.    Defendant Hitachi Displays, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. with its principal place of business at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo 101-0022 Japan. Defendant Hitachi Displays, Ltd. produced,

8

promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

24.     Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

25.     Defendant International Display Technology is a wholly owned Japanese subsidiary of Chi Mei Optoelectronics with its principal place of business at Nansei Yaesu Bldg., 3F, 2-2-10, Yaesu, Chuo-ku, Tokyo, 104-0028 Japan. Defendant International Display Technology produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

26.     Defendant International Display Technology USA, Inc. is a wholly owned subsidiary of International Display Technology and is incorporated in California with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant International Display Technology USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

27.     Defendant IPSA Alpha is a wholly owned subsidiary of Hitachi, Ltd., with its principal place of business at 3732, Hayano, Mobara-shi, Chiba 297-0037 Japan. It was created as a joint venture of Hitachi, Ltd., Toshiba Corporation and Matsushita Electric Industrial Co. Defendant IPSA Alpha Technology, Ltd. produced, promoted,

9

sold, marketed, and/or distributed LCD to consumers throughout the United States,
including in Massachusetts, during the Class Period.

28.     Defendant LG.Philips LCD Co., Ltd. is incorporated in South Korea with
its principal place of business at 20 Yoido-dong, Youngdungpo-gu, Seoul, 150-721 South
Korea. Defendant LG.Philips LCD Co., Ltd. produced, promoted, sold, marketed, and/or
distributed LCD to consumers throughout the United States, including in Massachusetts,
during the Class Period.

29.     Defendant LG.Philips LCD America, Inc. is a wholly owned subsidiary of
LG.Philips LCD Co., Ltd. and is incorporated in California with its principal place of
business at 150 East Brokaw Road, San Jose, California 95112. Defendant LG.Philips
LCD America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to
consumers throughout the United States, including Massachusetts, during the Class
Period.

30.     Defendant Matsushita Electric Industrial Co., Ltd. . (d/b/a as "Panasonic")
is a Japanese corporation with its principal place of business at 1006, Kadoma, Kadoma
City, Osaka 571-8501 Japan. Defendant Matsushita Electric Industrial Co., Ltd.
produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the
United States, including in Massachusetts, during the Class Period.

31.     Defendant Panasonic Corporation of America is a wholly owned
subsidiary of Matsushita Electric Industrial Co., Ltd. and is incorporated in Delaware
with its principal place of business at 1 Panasonic Way, Secaucus, New Jersey 07094.
Defendant Panasonic Corporation of America produced, promoted, sold, marketed,
and/or distributed LCD to customers throughout the United States, including

Massachusetts, during the Class Period.

32.    Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo, 100-8310 Japan. Defendant Mitsubishi Electric Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Massachusetts, during the Class Period.

33.    Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned subsidiary of Defendant Mitsubishi Electric Corporation. Mitsubishi Electric & Electronics USA, Inc. is incorporated in Delaware with its principal place of business at 5665 Plaza Drive Cypress, California 90630. Defendant Mitsubishi Electric & Electronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Massachusetts, during the Class Period.

34.    Defendant NEC Electronics Corporation is incorporated in Japan with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668 Japan. Defendant NEC Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Massachusetts, during the Class Period.

35.    Defendant NEC Electronics America, Inc. is a wholly owned subsidiary of NEC Electronics Corporation and is incorporated in California with its principal place of business at 2880 Scott Boulevard, Santa Clara, California 95050. Defendant NEC Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Massachusetts, during the Class

11

Period.

36.    Defendant NEC LCD Technologies, Ltd. is a Japanese corporation with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8666 Japan.  Defendant NEC LCD Technologies, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including Massachusetts, during the Class Period.

37.    Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, South Korea. Defendant Samsung Electronics Company, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

38.    Defendant Samsung Electronics America, Inc. is incorporated in New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660.  Defendant Samsung Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including Massachusetts, during the Class Period.

39.    Defendant Sanyo Electric Co. Ltd. is a Japanese corporation with its principal place of business at 5-5, Keihan-Hondori 2-chome, Moriguchi City, Osaka 570-8677 Japan.  Defendant Sanyo Electric Co. Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including Massachusetts, during the Class Period.

40.    Defendant Sanyo North America Corp. is incorporated in Delaware with its principal place of business at 2055 Sanyo Avenue, San Diego, California 92154.

Defendant Sanyo North America Corp. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including Massachusetts, during the Class Period.

41.    Defendant Epson Imaging Devices Corporation is a Japanese corporation with its principal place of business at 6925 Toyoshina Tazawa, Azumino-shi, Nagano, Japan. Defendant Epson Imaging Devices Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

42.    Defendant Seiko Epson Corporation is a Japanese corporation with its principal place of business at 3-3-5 Owa, Suwa, Nagano, 392-8502 Japan. Defendant Seiko Epson Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

43.    Defendant Epson America, Inc. is a wholly owned subsidiary of Seiko Epson Corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, California 90806. Defendant Epson America, Inc. manufactured, sold and distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

44.    Defendant Epson Electronics America, Inc. is a wholly owned subsidiary of Seiko Epson Corporation with its principal place of business at 150 River Oaks Parkway, San Jose, California, 95134. Defendants Epson Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

13

45.     Defendant Sharp Corporation is a Japanese corporation with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522 Japan.  Defendant Sharp Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

46.     Defendant Sharp Electronics Corporation is a wholly owned subsidiary of Sharp Corporation and is incorporated in New York with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430.  Defendant Sharp Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

47.     Defendant S-LCD Corporation ("S-LCD") is incorporated in South Korea with its principal place of business at Tangjung, Asan-City, ChungCheongMan-Do, South Korea.  It is a joint venture between Samsung (50% plus one share) and SONY (50% minus one share).  Defendant S-LCD Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

48.     Defendant Syntax-Brillian Corp. is incorporated in Delaware with its principal place of business at 1600 N. Desert Drive, Tempe, Arizona 85281.  Defendant Syntax-Brillian Corp. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

49.     Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan.

14

Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

50.     Defendant Toshiba America, Inc. is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020. Defendant Toshiba America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Massachusetts, during the Class Period.

51.     Defendant Toshiba Matsushita Display Technology Co., Ltd. is a Japanese joint venture between Toshiba and Matsushita with its principal place of business at Rivage Shinagawa, 4-1-8 Konan, Minato-ku, Tokyo, 108-0005 Japan. Defendant Toshiba Matsushita Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Massachusetts, during the Class Period.

52.     Whenever reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the corporation's management, direction, control, or business affairs. Moreover, Defendants acted as each other's agents or joint venturers with respect to their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as its parent company's agent for its parent's U.S. LCD sales.

53.     The acts charged in this Complaint have been done by the aforesaid Defendants and were ordered and performed by the aforesaid Defendants' officers,

15

directors, agents, employees or representatives while actively engaged in the
management, direction, control or transaction of said Defendants' business or affairs.

## ADDITIONAL DEFENDANTS

54.     As additional information may come to light, Plaintiff reserves the right to
add other Defendants as they become known to her.

55.     The acts alleged in this Complaint were, upon information and belief,
authorized, ordered or done by officers, agents, employees, or representatives of each
Defendant while actively engaged in the management of its business or affairs.

## CO-CONSPIRATORS

56.     Various other individuals, partnerships, corporations, organizations, firms,
and associations not yet made Defendants in this Complaint (the "Co-Conspirators") and
presently unknown to Plaintiff, participated as co-conspirators in the violation alleged
herein and performed acts and made statements in furtherance of the conspiracy.

57.     The true names and capacities, whether individual, corporate, associate,
representative, or otherwise, of the defendants named herein as DOES 1 through 100 are
unknown to Plaintiff at this time and are, therefore, sued by such fictitious names.
Plaintiff will amend this complaint to allege the true names and capacities of DOES 1
through 100 when they become known to Plaintiff.  Each of DOES 1 through 100 is in
some manner legally responsible for the violations of law alleged herein.

58.     The acts charged in this Complaint as having been done by Defendants
and the DOE Defendants, were authorized, ordered, or done by their officers, agents,
employees, or representatives while actively engaged in the management of Defendants'
businesses or affairs.

## CLASS ACTION ALLEGATIONS

59.     This action is brought by Plaintiff on behalf of herself and as

representative of a class (the "Class") pursuant to Rule 23 of the Federal Rules of Civil

Procedure. In particular, Plaintiff asserts that a class action is appropriate under Rule

23(b)(3).

60.     The Class is defined as:

> All persons residing in Massachusetts who indirectly
> purchased LCD - or products containing LCD -
> manufactured and sold by one or more of the defendants
> during the Class Period. The class of indirect purchasers of
> these products includes consumers and businesses that have
> purchased LCD and/or products containing LCD.
> Excluded from the Class are: all federal, state, or local
> governmental entities; Defendants' subsidiaries and
> affiliates; and all persons who purchased LCD directly
> from any Defendant or from any other manufacturer of
> LCD.

61.     Although the exact size of the Class is unknown, the total number of Class

Members is estimated to be in the thousands as most consumers have purchased LCD

and/or products containing LCD. Based upon the nature of the trade and commerce

involved, joinder of all Class Members would be impracticable.

62.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff will

fairly and adequately protect the interests of the Class. Plaintiff has no conflict with any

other Class member and has retained competent counsel experienced in class action and

antitrust litigation.

63.     Common questions of law and fact exist, including:

(a)     Whether Defendants conspired with each other and
        others to fix, raise, stabilize or maintain the prices
        of LCD;

17

(b) Whether Defendants' acts were unfair or deceptive;

(c) Whether Defendants' conspiracy caused the prices of LCD and products containing LCD to be higher than the prices would have been in the absence of Defendants' conduct;

(c) The length of the operative time period for Defendants' conspiracy;

(d) Whether Defendants' conduct caused injury to the business or property of Plaintiff and the Class and, if so, the appropriate measure of damages;

(e) Whether Defendants' conduct violated the Massachusetts Consumer Protection Act M.G.L. c. 93A § 9(3);

(f) Whether Defendants actively concealed the violations alleged herein; and

(g) The appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class Members and predominate over any questions affecting only individual Class Members.

64. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action vehicle provides an efficient method for enforcement of the rights of Plaintiff and the Class, and such litigation can be fairly managed. Plaintiff knows of no unusual problems of management or notice.

65. It is desirable for the claims of Plaintiff and the Class Members to be consolidated into a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of Massachusetts and the United States.

66. The difficulties that may exist in the management of the class action are

far outweighed by the benefits of the class action procedure, including but not limited to providing Plaintiff and the other Class Members with a suitable method for the redress of their claims.

## **FACTUAL ALLEGATIONS**

### A.    **Background of the LCD Industry**

67.    LCD is a thin, flat display device consisting of pixels aligned in front of a reflector or source of light. LCD generally consists of a mask of colored pixels and a layer of liquid crystal solution sandwiched between two panes of polarized glass. When an electric current is passed through the liquid crystals, the crystals react, creating electric fields. By manipulating the state of liquid crystals using electrical charges, the liquid crystals act like tiny shutters, opening or closing in response to the stimulus, thereby allowing light to pass through the colored pixels. As a result, LCD is illuminated and creates an image.

68.    LCD technology was introduced during the early 1970s. It was used commercially for laptop computer screens during the late 1980s. Today, LCD is used in a variety of electronic products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players.

69.    The LCD market is conducive to anticompetitive practices. The market is oligopolistic, is characterized by high manufacturing costs, and has technological barriers to entry. The high barriers to entry are due to the capital-intensive nature of the display industry and the high volume of production required to achieve economies of scale.

70.    According to reports, the worldwide market for LCD was worth $53 billion in

19

2004. Other estimates suggest that the market is now worth approximately $70 billion. Most LCD panels are manufactured in Taiwan and South Korea. For the first quarter of this year, Taiwan accounted for 52.2% of the LCD panel shipments, while South Korea had a 37.4% share. Last year, South Korea led with a 48.8% share against Taiwan's 41.8% share.

71.     LG.Philips and Samsung have consistently been the industry's leading manufacturers.

72.     Prior to the Class Period, LCD prices in the United States decreased significantly. New competitors entered the LCD market. Moreover, the increased manufacturing capacity resulting from newly constructed advanced generation factories and efficiency in production equipment and processes contributed to price declines. The LCD manufacturers saw their profit margins squeezed from falling average selling prices. Prices dropped so precipitously that producers were actually selling at production cost, without making any profit.

73.     Upon information and belief, however, the average selling price of LCD rose significantly from 2003 to 2004 largely due to collusion among Defendants. During this period, Defendants agreed to reduce supply in order to artificially raise prices.

74.     Defendants' collusion operated to stymie the decline in prices prior to 2003, in that they raised prices to supra-competitive levels. By 2003, prices climbed. For instance, the average price of LCD larger than 10 inches increased from $219 in the second quarter to $271 in the fourth quarter. At the end of 2003, the market was valued at $33 billon, a significant increase from $29 billion in 2002. This increasing average price of LCD continued to rise through 2004, when prices hit an all-time high. According to industry analysts, the market was valued at $36 billion in 2004. It was the

20

collusive activity among Defendants and their Co-Conspirators that kept the prices at supra-competitive levels and led to the increase in value of the overall LCD market.

75. The LCD industry has undergone significant consolidation throughout the Class Period, leading to substantially fewer LCD manufacturers in the market. Examples of this consolidation include AU Optronics' acquisition of Quanta Display and the collaboration by industry leaders to create ventures such as S-LCD, Toshiba Matsushita Display Technology and Sanyo Epson Imaging Devices.

76. The market for LCD products is large and steadily increasing in size. For example, shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007, which is a 6.3% increase from the 145.2 million units shipped during the latter half of 2006 and is a 23.7% increase from the first half of 2006.

## B. Investigation of the LCD Industry

77. The United States Department of Justice (the "DOJ") recently launched an investigation into anticompetitive practices by LCD manufacturers. On or about December 8, 2006, the DOJ subpoenaed Defendants LG.Philips, Samsung, Sharp and Chi Mei Optoelectronics. A spokesperson for the DOJ confirmed that an investigation is underway in the LCD industry and that the DOJ is cooperating internationally with other antitrust authorities. Several Defendants, including LG.Philips, Sharp and Samsung, acknowledged publicly that the DOJ has subpoenaed them about the LCD investigation.

78. Authorities in the European Union, Japan, South Korea and Taiwan have launched similar probes in coordination with the DOJ investigation. On December 12, 2006, the European Commission confirmed that it had sent formal requests for information to a number of LCD producers. Japan's Fair Trade Commission also confirmed that it is

21

investigating allegations of price-fixing against LG.Philips, Samsung, AU Optronics, Sharp, Seiko Epson, Toshiba Matsushita Display Technology, NEC, Hitachi, and IPS Alpha. LG.Philips publicly acknowledged on December 11, 2006, that it is being investigated in various countries: "[A]s part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission visited the offices of LG.Philips LCD in Seoul, Korea." Defendants Samsung, Sharp and Chi Mei Optoelectronics have also confirmed that they are under investigation by competition regulators overseas.

79. Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the most recent conspiracy in the Dynamic Random Access Memory ("DRAM") market and the alleged conspiracy in the Static Random Access Memory ("SRAM") market. Not surprisingly, many of Defendants in these other cases are also implicated in this new investigation of the LCD industry such as Defendants Samsung and Toshiba.

## TRADE AND COMMERCE

80. The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of LCD throughout the United States, including Massachusetts.

81. During the Class Period, Defendants manufactured, sold and shipped substantial quantities of LCD to manufacturing businesses and consumers throughout the United States, including Massachusetts. Those businesses resold and/or incorporated LCD into other products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal

22

assistants and digital music players and then sold those goods to businesses and consumers

throughout the United States, including Massachusetts.

82.    The contract, combination, and conspiracy consists, upon information and

belief, of a continuing agreement, understanding, and concert of action between and

among Defendants and their Co-Conspirators, the substantial terms of which were and

are to fix, stabilize, and maintain prices, allocate markets and customers, and coordinate

price increases for the sale of LCD throughout the United States, including

Massachusetts.

83.    The acts in furtherance of the conspiracy by Defendants have included, on

information and belief, the following wrongful conduct and horizontal agreements:

> (a)    participating in meetings and conversations on a
> periodic basis since at least January 1, 2002 in
> which Defendants and their Co-Conspirators
> discussed and agreed to fix, raise, stabilize, and
> maintain the prices for LCD;

> (b)    participating in meetings and conversations on a
> periodic basis since at least January 1, 2002 in
> which Defendants and their Co-Conspirators
> discussed and agreed to allocate markets and
> customers for LCD;

> (c)    participating in meetings and conversations on a
> periodic basis since at least January 1, 2002 in
> which Defendants and their Co-Conspirators
> discussed and agreed to refrain from engaging in
> competitive bidding and to submit complementary
> and non-competitive bids for particular contracts to
> supply LCD and/or products containing LCD to
> various customers;

> (d)    exchanging sales and customer information for the
> purposes of monitoring and enforcing adherence to
> the agreements reached;

> (e)    issuing price announcements, price quotations, and

23

general price increases in accordance with the
pricing and market allocation agreements reached;
and

(f)     facilitating, effectuating, implementing, monitoring
and concealing the contract, combination, and
conspiracy to raise the prices of LCD sold.

84.     For the purposes of formulating and effectuating the aforesaid contract,

combination, and conspiracy, Defendants and their Co-Conspirators did those things that

they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

85.     The contract, combination, and conspiracy alleged herein had the

following effects, among others:

(a)     prices paid by Plaintiff and the Class Members for
LCD and products containing LCD were fixed,
raised, maintained, and stabilized at artificially high
and noncompetitive levels;

(b)     indirect purchasers of LCD and products containing
LCD were deprived of the benefits of free and open
competition; and

(c)     competition between and among Defendants and
their Co-Conspirators in the sale of LCD and/or
products containing LCD was unreasonably
restrained.

86.     As a result, Plaintiff and the Class Members have been injured in their

businesses and property in that they have not only been deprived of the benefits of fair

and open competition on the merits but have paid more for LCD and/or products

containing LCD than they otherwise would have paid in the absence of Defendants'

unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

87.     Plaintiff hereby incorporates by reference each of the preceding

paragraphs as if fully set forth herein.

24

88. Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing. Defendants further effectively, affirmatively, and fraudulently concealed their unlawful combination, conspiracy, and acts in furtherance thereof from Plaintiff and the Class Members.

89. Although Plaintiff exercised due diligence throughout the Class Period, she could not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of their activities. Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection and that successfully precluded detection.

90. Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of LCD to natural reasons such as seasonal ebb and flow and a highly competitive market. Defendants also instructed their United States entities to offer similar false reasons to explain price increases to customers in the United States, including in Massachusetts. Those fluctuations were, in fact, due to Defendants' periodic withholding of the supply of LCD to create an artificial supply shortage, which in turn generated a level of artificial demand and drove up prices.

91. Plaintiff and the Class Members had no reason to disbelieve Defendants' explanations of the pricing behavior of these products. Indeed, in some instances Defendants' explanations involved proprietary or otherwise non-public information within Defendants' exclusive control, leaving Plaintiff and the Class Members without means to verify their accuracy. Plaintiff did not know nor could she have known that

25

Defendants' prices for LCD were artificially inflated and maintained by virtue of Defendants' illegal price-fixing conspiracy. Nor did Plaintiff know nor could she have known that she and the other Class Members were paying higher prices for LCD and/or products containing LCD than they would have paid in a competitive market.

92. Plaintiff has exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants' conspiracy and by seeking discovery as to the matters asserted herein, to the extent permitted by law.

## COUNT I
### (Violation of M.G.L. c. 93A, § 9)

93. Plaintiff hereby incorporates by reference paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94. Beginning at least by January 1, 2002, the exact date being unknown to Plaintiff, and continuing to the present, Defendants and their Co-Conspirators committed actions that constitute unfair methods of competition and unfair and deceptive trade practices, which substantially affected trade and/or commerce throughout the United States, including Massachusetts. The foregoing conduct has been, and continues to be, conducted in violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, M.G.L. c. 93A, § 9(2).

95. Specifically, Plaintiff brings this class action as a consumer and seeks actual damages and/or statutory damages as provided for in M.G.L. c. 93A, § 9(4).

96. Each defendant named herein, directly or indirectly and through affiliates, dominated, controlled, manufactured, sold and/or distributed LCD in Massachusetts and throughout the United States.

97.     During the Class Period, Defendants have directly or indirectly, and
through affiliates they dominated and controlled, engaged in unfair and deceptive acts
and practices including those described herein and/or combinations of capital, skill, and
acts with others with the intent, purpose and effect of creating and carrying out
restrictions in trade and commerce; increasing the price and limiting and reducing the
supply of LCD; and restraining trade and preventing competition in the relevant markets
of LCD products. Defendants actions were designed to have, and did have, a substantial
and adverse impact on prices for LCD in Massachusetts and throughout the United States.
Defendants' activities constitute willful and knowing violations of M.G.L. c. 93A, § 9
allowing Plaintiff's claims for treble damages.

98.     Through their conspiracy and unfair and deceptive trade practices,
Defendants have been able to artificially fix, raise and stabilize the prices of LCD sold in
the Commonwealth of Massachusetts and throughout the United States at supra-
competitive prices.

99.     As a direct and proximate result of Defendants' unfair or deceptive acts or
practices and unlawful, anticompetitive practices, Plaintiff and consumers throughout
Massachusetts have suffered injury and have been deprived of the benefits of free and fair
competition on the merits.

100.    In February 2007, pursuant to M.G.L. c. 93A § 9(3), Plaintiff served each
Defendant with a demand letter identifying Plaintiff and the putative class as well as
sufficiently describing Defendants' acts and conspiracies constituting unfair competition
and/or unfair and deceptive trade practices; the effects of such acts and conspiracies
including injuries suffered by Plaintiff and putative class; as well as demands for relief

27

and for information necessary to fully describe the injury sustained. (See Ex. A, attached hereto, the "Demand Letter").

101.     More than thirty days have passed since the demand letters were served. Defendants have refused to grant the requested relief or tender a reasonable settlement offer. Defendants have failed to tender a reasonable offer despite knowledge of the willful and intentional unfair or deceptive acts or practices of which Plaintiff complains. Such knowledge and failure supports a claim for treble damages, attorneys' fees, interest, costs and other relief provided for in M.G.L. c. 93A §§ 2 and 9.

## COUNT II
## (Violation of the Sherman Act and Request for Injunctive Relief)

102.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

103.     Beginning by at least January 1, 1998 and continuing to the present, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for LCD in Massachusetts and the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

104.     Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

105.     Defendants' illegal combination and conspiracy as alleged herein had the intent and effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

106.    It is in the best interest of the public to enjoin Defendants and their

officers, agents, employees, or representatives, pursuant to the Clayton Act, 15 U.S.C. §

26, from engaging in the unlawful contract, combination, and conspiracy in restraint of

trade or commerce of LCD.

107.    Plaintiffs and the Class will continue to be injured by Defendants' ongoing

conduct in violation of the antitrust laws of the United States and the consumer protection

statutes of the Massachusetts in the absence of injunctive relief.

## COUNT III
## (Unjust Enrichment and Disgorgement of Profits)

108.    Plaintiff hereby incorporates by reference each of the preceding

paragraphs as if fully set forth herein.

109.    Defendants benefited from their unlawful acts through the overpayment

for LCD and products containing LCD by Plaintiff and the Class Members. It would be

inequitable and unconscionable for Defendants to be permitted to retain the benefits of

these overpayments, which were conferred by Plaintiff and the Class Members and

retained by Defendants.

110.    Plaintiff and the Class Members are entitled to have returned to each of

them the amount of such overpayments as damages or restitution.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court

(i)    Certify this action to proceed as a class action pursuant to Rule 23 of the
       Federal Rules of Civil Procedure and direct that reasonable notice be
       given to members of the Class;

(ii)   Declare that Defendants have engaged in unfair and deceptive acts,
       practices, and/or combinations of capital, skill, and acts with others
       sufficient to constitute a trust for the purpose of creating or carrying out

29

restrictions in trade or commerce, limiting and reducing the production and increasing the price of merchandise or a commodity, and preventing competition in the manufacturing, making, transporting, selling and/or purchasing of merchandise, products, or a commodity;

(iii) Adjudge and decree that Defendants and each of them have engaged in unfair competition and unfair and deceptive trade practices in violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, M.G.L. c. 93A, §2 and §9 and that the Court award Plaintiff and members of the Class (i) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; and/or (ii) statutory damages under M.G.L. c. 93A, §9(3);

(iv) Adjudge and decree that Defendants violated M.G.L. c. 93A §§2 and 9(3) because their failure and refusal to grant relief or a reasonable offer of settlement upon demand was made in bad faith with knowledge or reason to know that the acts or practices complained of violated § 2 and that the Court double or treble any award;

(v) Award Plaintiff and the members of the Class the costs of the suit, including reasonable attorneys' fees available under M.G.L. c. 93A, §9(4);

(vi) Award Plaintiff and the members of the Class a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

(vii) Award Plaintiff and members of the Class pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

(viii) Grant such other, further or different relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims for which she is entitled to a jury

trial.

Respectfully submitted,

For Plaintiff,

HEIDI BATES,

Pete S. Michaels BBO # 553535
Deborah G. Evans BBO # 631142
Jennifer R. Seltenrich BBO # 641144
Michaels & Ward, LLP
12 Post Office Square
Boston, MA 02109
(617)350-4040

Richard L. Coffman, Esq.
The Coffman Law Firm
1240 Orleans St., Ste. 200
Beaumont, TX 77701

Wyatt B. Durrette, Jr.
Durette Bradshaw PLC
600 East Main Street, 20th Floor
Richmond, VA 77701

31